UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| STANLEY D. CROW, an individual; and S. CROW COLLATERAL CORP., an Idaho corporation,<br><br>　　　　　　Plaintiffs,<br><br>　　v.<br><br>UNITED STATES OF AMERICA, by and through its agency the UNITED STATES DEPARTMENT OF THE TREASURY and its bureau the INTERNAL REVENUE SERVICE,<br><br>　　　　　　Defendants. | Case No. 1:24-cv-00346-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

Plaintiffs Stanley D. Crow (Crow) and S. Crow Collateral Corp. (Crow Collateral) bring this action against the United States Department of Treasury and Internal Revenue Service, challenging their right to promulgate regulations that would identify "monetized installment sale transactions" as listed transactions subject to disclosure requirements. Before the Court is Defendant's Motion to Dismiss pursuant to Rule 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure (Dkt. 17). For the reasons set forth below, the Court grants the motion.

### I.　　BACKGROUND

**A.　　The Monetized Installment Sale Transaction**

This case represents the latest chapter in a long-running dispute between Plaintiffs and the IRS regarding monetized installment sale transactions. Crow is Crow Collateral's president and director, and Crow Collateral deals in capital assets (Dkt. 1 ¶ 2). Crow Collateral facilitates

**MEMORANDUM DECISION AND ORDER - 1**

transactions between sellers and buyers by purchasing capital assets from sellers through installment obligations that mature in later tax years, then immediately reselling the properties to buyers for cash (*id.* ¶ 2, 19). The IRS refers to these deals as "monetized installment sale transactions" or "MIS transactions."

In a typical MIS transaction, as described by the IRS, a seller and a buyer enter into an agreement for the sale of property for a set purchase price. Rather than selling directly to the buyer, however, the seller transfers the property to an intermediary like Crow Collateral in exchange for a thirty-year installment note. The intermediary then immediately sells the property to the ultimate buyer for cash. Simultaneously, the seller obtains a loan from a non-bank lender, often referred to it by the intermediary, for an amount approximating the cash sales price, with loan terms that mirror the installment note. The seller reports the transaction as an installment sale under 26 U.S.C. § 453, deferring gain recognition for up to thirty years despite receiving the economic equivalent of the purchase price upfront (*id.* at 52-53).

Plaintiffs maintain that MIS transactions are "expressly permitted by statute," and Congress "clearly" intends sellers use "the installment method" to "take advantage" of its tax deferral benefits (*id.* ¶ 3). Nonetheless, according to Plaintiffs, Treasury and the IRS "do not like these transactions" (*id.* at 2) and have waged "a years-long public relations campaign" designed to discourage taxpayer participation with businesses like Crow Collateral as "promoters" of "tax scams" (*id.* ¶¶ 3-4). This campaign, Plaintiffs allege, has taken multiple forms: publishing annual press releases since 2021 that list MIS transactions among the "Dirty Dozen" tax scams; representing to the Tax Court that Plaintiffs promote abusive tax avoidance transactions; and pursuing an ongoing "promoter investigation" against Plaintiffs (*id.* ¶¶ 43-56). Plaintiffs contend these actions share a "clear purpose"—to "chill taxpayer participation" in MIS transactions while

**MEMORANDUM DECISION AND ORDER - 2**

tainting the Tax Court's perception of them (*id.* ¶ 53, 57). Yet, despite these efforts to malign Plaintiffs and their business, "[t]he IRS has yet to convince a court that Plaintiffs' business dealings violate the law" (Dkt. 18 at 5).

B.  **Notice of Proposed Rulemaking**

On August 4, 2023, the IRS published a notice of proposed rulemaking, entitled *Identification of Monetized Installment Sale Transactions as Listed Transactions* ("Notice" or "NPRM"). *See* 88 Fed. Reg. 51756 (Aug. 4, 2023). The NPRM contains proposed regulations that would designate the MIS transaction as a "listed transaction" (Dkt. 1, Ex. A), a subset of "reportable transactions" "specifically identified" by the Treasury Secretary "as a tax avoidance transaction." 26 C.F.R. § 1.6011-4. Although taxpayers remain free to participate in listed transactions, existing Treasury regulations require "participants" in a listed transaction and their "material advisors" to file certain disclosures. 26 C.F.R. §§ 1.6011-4(e)(2)(i), 301.6111-3(b)(4)(iii), 301.6111-3(e) (collectively, the "Reporting Regulations"). The NPRM's proposed regulations would subject MIS transactions to these disclosure requirements and impose monetary penalties for non-compliance (Dkt. 1 at 50, 55).

The IRS published the NPRM in the Federal Register, inviting public comment and scheduling a public hearing (*id.* at 50). As explained in the NPRM, the IRS issued these proposed regulations following the notice-and-comment procedures required by section 553 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553, in response to recent judicial decisions holding that the failure to follow such procedures when designating a transaction as "listed" violates the APA (*id.* at 54). [1] Historically, the IRS had identified most listed transactions through

---

[1]   *Mann Construction v. United States*, 27 F.4th 1138, 1147 (6th Cir. 2022); *Green Rock, LLC v. IRS*, 654 F. Supp. 3d 1249 (N.D. AL., February 2, 2023); *GBX Associates, LLC, v. United*

"IRS notices" containing "guidance" that it published in the Internal Revenue Bulletin or Internal Revenue Manual without undergoing public notice and comment (*id.*). While disagreeing with these decisions, the IRS proceeded through formal rulemaking "to avoid confusion and ensure consistent enforcement" (*id.*). Under this rulemaking process, the proposed regulations become effective only upon publication in the Federal Register adopting them as final regulations (*id.* at 55).

C.     **Plaintiffs' Complaint**

Plaintiffs filed this action seeking to have the NPRM and Reporting Regulations declared unlawful and set aside. Their complaint presents eight counts for relief, which fall into three distinct categories: first, claims brought under the APA (Counts One, Two, Three, Four, and Eight); second, a claim under the Declaratory Judgment Act (Count Five); and third, claims seeking mandamus-like relief (Counts Six and Seven).

The APA claims form the core of Plaintiffs' challenge. In Counts One through Three, Plaintiffs seek to set aside the NPRM on the grounds that it (1) is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; (2) is unconstitutionally vague and imposes impossible reporting obligations; and (3) exceeds the IRS's statutory authority to identify "listed transactions." In Counts Four and Eight, Plaintiffs extend their challenge to the Reporting Regulations. Count Four alleges that, "working in tandem" with the NPRM, the Reporting Regulations impermissibly impose retroactive reporting obligations in violation of 26 U.S.C. § 7805(b). Count Eight alleges the IRS failed to respond adequately to "significant" public

---

*States*, 2022 WL 16923886 (N.D. Ohio, Nov. 14, 2022); *Green Valley Investors, LLC, et al. v. Commissioner*, 159 T.C. 80 (Nov. 9, 2022).

**MEMORANDUM DECISION AND ORDER - 4**

comments during notice-and-comment rulemaking before finalizing the regulations. Plaintiffs contend Count Eight accrued only upon publication of the NPRM in 2023.

In the alternative, Plaintiffs seek an order declaring them exempt from filing disclosures for tax periods ending prior to the NPRM's publication (Count Five) and mandating Treasury issue regulations under 26 U.S.C. § 453A(e) before finalizing the NPRM regulations (Counts Six and Seven). In response, Defendants move to dismiss the complaint under Rule 12(b)(1) for lack of jurisdiction and Rule 12(b)(6) for failure to state a claim.

## II. LEGAL STANDARD

### A. Rule 12(b)(1) – Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction. A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. The plaintiff bears the burden of establishing that the court has jurisdiction. When reviewing a facial attack on jurisdiction, the court accepts the complaint's factual allegations as true and construes them in the light most favorable to the plaintiff. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014).

### B. Rule 12(b)(6) – Failure to State a Claim

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the court must accept all factual allegations as true, it is not bound to accept legal conclusions couched as factual allegations. *Id.*

## III. ANALYSIS

Defendants move to dismiss Plaintiffs' complaint, arguing the Court lacks subject matter jurisdiction because Plaintiffs challenge agency action that is neither final nor ripe for judicial review. According to Defendants, the NPRM represents only the first step in the APA's notice-

and-comment rulemaking process—a process designed to ensure that agencies finalize rules with fair notice and opportunity for feedback, and courts review only finalized rules in a concrete setting. They contend that Plaintiffs impermissibly seek to circumvent these bedrock principles by challenging the NPRM before the regulations become final.

Plaintiffs dispute the NPRM contains merely "proposed" rules. They characterize it as the IRS's "final and cumulative policy position" that MIS transactions are "scams" violating the Internal Revenue Code (Dkt. 1 ¶ 5). Rather than viewing the NPRM as a proposal subject to change, Plaintiffs see it as the culmination of the IRS's years-long campaign against these transactions (*id.*). This campaign, they allege, has already inflicted concrete harm: IRS statements have deterred clients from pursuing legal installment sales, causing immediate damage to Plaintiffs' business (*id.*). According to Plaintiffs, this lost business "cannot be restored until a court rightfully determines that the IRS's widely disseminated pronouncements regarding so-called MIS Transactions are not in accordance with the law" (*id.*).

A.  **The APA Does Not Provide Jurisdiction for Review of the NPRM**

Defendants seek dismissal of Plaintiffs' APA claims challenging the NPRM on the grounds that sovereign immunity has not been waived and no jurisdictional basis exists for these claims (Counts One, Two, Three, and Five).

"The United States, as sovereign, is immune from suit save as it consents to be sued." *Navajo Nation v. Dep't of the Interior*, 876 F.3d 1144, 1167 (9th Cir. 2017) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Section 702 of the APA waives sovereign immunity for challenges to agency action seeking non-monetary relief, but § 704 limits that waiver for claims grounded in the APA to "final agency action for which there is no other adequate remedy in a court" or agency action "made reviewable by statute." 5 U.S.C. § 704; *see also Gallo Cattle Co.*

*v. U.S. Dep't of Agric.*, 159 F.3d 1194, 1198 (9th Cir. 1998). As the Supreme Court recently reiterated, §§ 702 and 704 "work hand in hand: Each is a necessary, but not by itself sufficient, ground for stating a claim under the APA." *Corner Post, Inc. v. Bd. of Governors of Fed. Rsrv. Sys.*, 603 U.S. 799, 808 (2024). Because the NPRM is neither a final agency action nor made reviewable by statute, it is not subject to judicial review under the APA.

    1.    **Final Agency Action**

An agency action is "final" only if it satisfies both prongs of the test established in *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). First, the action must "mark the consummation of the agency's decisionmaking process"—it cannot be "of a merely tentative or interlocutory nature." Second, the action must be one "by which rights or obligations have been determined, or from which legal consequences will flow." The NPRM fails both prongs of the *Bennett* test.

As to the first prong, the NPRM marks the beginning not the "culmination" of the rulemaking process to designate the MIS transaction as a "listed transaction." The APA establishes a three-step process for promulgating legislative rules: (1) publication of a general notice of proposed rulemaking in the Federal Register; (2) receipt and consideration of public comments; and (3) promulgation of final rules with a statement of basis and purpose. 5 U.S.C. § 553. The NPRM, by definition, is the first step in this process: it sets forth the proposed rules, invites public comment, and states explicitly that the MIS transaction will be identified as a listed transaction "effective the date that these regulations are published as final regulations in the Federal Register." 88 Fed. Reg. at 51763.

    Plaintiffs nonetheless attempt to recharacterize the NPRM as a final interpretive rule that conclusively determines that MIS transactions constitute tax avoidance. They point to the NPRM's statement that "the IRS will take the position in litigation that taxpayers are not entitled to the

purported tax benefits" of these transactions and argue this statement has immediate deterrent effects on taxpayer behavior, i.e., "freezing" their business and "presently forc[ing] them to incur compliance costs" (Dkt. 18 at 11). This argument, however, conflates practical effects with finality of agency action. Every proposed rule signals an agency's tentative position and may influence behavior in the regulated community. "But courts have never reviewed *proposed* rules, notwithstanding the costs that parties may routinely incur in preparing for anticipated final rules." *In re Murray Energy Corp.*, 788 F.3d 330, 334-35 (D.C. Cir. 2015).

Not surprisingly, therefore, courts overwhelming hold proposed rules are not final agency actions. *See id.* (ruling that proposed rules "meet neither of the two requirements for final agency action"); *Am. Portland Cement All. v. EPA*, 101 F.3d 772, 777 (D.C. Cir. 1996) (ruling that when a proposed regulation is still in "flux," review is "premature"); *Belmont Abbey Coll. v. Sebelius*, 878 F. Supp. 2d 25, 39 (D.D.C. 2012) (ruling that advance notice of proposed rulemaking is "not 'sufficiently final' to satisfy the fitness prong of the ripeness inquiry"); *c.f. Ecology Ctr., Inc. v. USFS*, 192 F.3d 922, 925 (9th Cir. 1999) (holding that monitoring and reporting under NFMA were not agency actions that consummated the Forest Service's decision-making process because they were "only steps leading to an agency decision, rather than the final action itself"). Plaintiffs have not cited a single case finding a notice of proposed rulemaking constitutes final agency action.

Plaintiffs' reliance on *Appalachian Power Co. v. EPA*, 208 F.3d 1015 (D.C. Cir. 2000), is misplaced. That case involved completed agency guidance that was being applied as binding, not a proposed rule subject to modification through notice and comment. Further, *Appalachian Power* emphasized that even binding guidance would not constitute final agency action if it had a "merely tentative or interlocutory nature." *Id.* at 1022. A proposed legislative rule still undergoing the

**MEMORANDUM DECISION AND ORDER - 8**

APA's notice-and-comment process will always be "merely tentative or interlocutory" and therefore can never be "final."

Even if the Court were to assume the NPRM satisfies the first *Bennett* prong, it does not satisfy the second prong. The NPRM determines no rights or obligations and creates no legal consequences. Plaintiffs, in fact, acknowledge that the NPRM "by its plain terms does not currently oblige Plaintiffs" to file disclosure statements (Dkt. 1, ¶ 148). The proposed regulations are not yet legally enforceable. No penalties can be assessed for non-compliance with proposed regulations, and no legal obligations flow from them. Rather, "[a]ny such legal obligations or prohibitions will be established, and any legal consequences for violating those obligations or prohibitions will be imposed," only after the rule is finalized. *Murray*, 788 F.3d at 336. Any representations the IRS has made to the NPRM's effect do nothing to change this analysis.[2]

As the D.C. Circuit has explained, "[i]t is elementary that the mere conduct of proceedings on a proposal of a rule, which may never be adopted or enforced, is not final action[.]" *Ass'n of Nat. Advertisers, Inc. v. F.T.C.*, 627 F.2d 1151, 1178 (D.C. Cir. 1979) (Leventhal, J. concurring). The Court agrees and sees "no persuasive reason to blaze a new trail here." *Murray*, 788 F.3d at

---

[2]     Plaintiffs have asked the Court to "take judicial notice of statements the IRS had made in a brief to the Tax Court that the IRS has "identified monetized installment sales as a 'listed transaction,' and that the IRS's purpose in issuing the Notice was to alert taxpayers and practitioners to the problematic nature of these deals" (Dkt. 21 at 2). Courts have routinely held that a court may take judicial notice of (1) the existence of a motion or brief filed by a party in another judicial proceeding; and (2) the fact that a party made a representation in that court filing. *See Nationwide Agribusiness Ins. v. George Perry & Sons, Inc.*, 338 F. Supp. 3d 1063, 1068 n.2 (E.D. Cal. 2018) ("Courts may judicially notice facts of public record in a judicial or administrative proceeding that directly relate to the matters at issue, such as the existence of a motion or of representations made therein."); *see also United States v. S. California Edison Co.*, 300 F. Supp. 2d 964, 974 (E.D. Cal. 2004) (same). The Court therefore takes judicial notice of the existence of the brief and the representations made in that brief.

**MEMORANDUM DECISION AND ORDER - 9**

335. The Court therefore declines to find the NPRM's alleged "chilling effect" transforms a proposed rule into final agency action.

### 2. The NPRM Is Not Otherwise Made Reviewable by Statute

Plaintiffs alternatively argue that even if the NPRM does not constitute final agency action, it qualifies as agency action "made reviewable by statute" under 5 U.S.C. § 704. As noted, the APA provides for judicial review not only of "final agency action," but also of agency action "pursuant to specific authorization in [a] substantive statute." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 882 (1990); *see also Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 860 (8th Cir. 2013) (recognizing that APA waives sovereign immunity for suits seeking judicial review of "[a]gency action made reviewable by statute") (quoting 5 U.S.C. § 704).

Plaintiffs contend the NPRM is reviewable under 26 U.S.C. § 7805(b), which limits retroactive application of certain proposed Treasury regulations. They claim that the Reporting Regulations, "working in tandem with the NPRM," violate Section 7805(b) and argue this provision "is the exact type of statute that 'makes' a nonfinal agency action 'reviewable' under the APA" (Dkt. 18 at 13). They reason that any other interpretation would render Section 7805(b)'s prohibition on certain retroactive regulations "surplusage" (*id.*).

The Court rejects this novel argument. As Defendants correctly observe, Plaintiffs cite no supporting case law and fail to acknowledge that cases finding agency actions "made reviewable by statute" involve statutes containing explicit review provisions (Dkt. 19 at 10). For example, in *Iowa League of Cities*, the Eighth Circuit reviewed the plaintiffs challenge to two Environmental Protection Agency letters sent to a U.S. senator—not as "final agency action" under the APA's general review provisions, but under the Clean Water Act, which "expressly makes specified agency actions reviewable." 711 F.3d at 861, 863 n.12. Similarly, in *Florida Home Builders Ass'n v. Norton*, the court found jurisdiction to review defendants' failure to conduct mandatory species

**MEMORANDUM DECISION AND ORDER - 10**

status reviews under the Endangered Species Act, which "explicitly 'provides a private right of action' to compel the Secretary of the Interior to perform the duties outlined in section 1533." 496 F. Supp. 2d 1330, 1335 (M.D. Fla. 2007); *see also Nereida Trading Co. v. United States*, 34 C.I.T. 241, 250 (2010) (noting that 28 U.S.C. §§ 2631–2646 provides a "special statutory review proceeding").

Section 7805(b), by contrast, contains no judicial review provision. It is a substantive limitation on the Secretary's rulemaking authority, not a jurisdictional grant to the courts. To make agency action reviewable under Section 7805(b) "would read into the statute words not explicitly inserted by Congress." *Stanton Rd. Assocs. v. Lohrey Enters.*, 984 F.2d 1015, 1020 (9th Cir. 1993). The Court lacks such power without evidence of Congress' clear intent to create such a right. *See id.* (concluding the court lacked the power to read into a statute authority to award attorney fees absent an explicit attorney fee provision); *c.f. Harper v. Williford*, 96 F.3d 1526, 1528 (D.C. Cir. 1996) (citing *Middlesex Cnty. Sewerage Authority v. Nat'l Sea Clammers Ass'n*, 453 U.S. 1, 13 (1981)) (ruling courts should not "presume the existence of a private right of action where none is explicitly articulated by Congress").

The law is clear: "When a statute does not specifically make agency action reviewable, the [APA] limits the right of judicial review to 'final' agency action." *Am. Small Bus. League v. Contreras-Sweet*, 712 F. App'x 667, 667 (9th Cir. 2018); *see also Lujan*, 497 U.S. at 882 ("When, as here, review is sought not pursuant to specific authorization in the substantive statute, but only under the general review provisions of the APA, the 'agency action' in question must be 'final agency action.'"). Because Section 7805(b) does not specifically make agency action reviewable, and the NPRM does not constitute final agency action, this Court lacks subject matter jurisdiction

over Plaintiffs' claims "grounded in the APA" that seek to set aside the NPRM, including Count Five.

B.  **None of Plaintiffs' Claims Are Ripe for Review**

The ripeness doctrine poses an additional bar to Plaintiffs' claims seeking to set aside the NPRM, including Counts Six and Seven. Plaintiffs' two remaining claims challenging the Reporting Regulations, Counts Four and Eight, are also unripe because they hinge on the NPRM's proposed regulations being finalized and taking effect.

The ripeness doctrine serves to "prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1138 (9th Cir. 2000). In the administrative agency context, the doctrine serves the additional purpose of protecting "agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." *Chlorine Inst., Inc. v. Fed. R.R. Admin.*, 718 F.3d 922, 927 (D.C. Cir. 2013) (quoting *Nat'l Park Hosp. Ass'n v. U.S. Dep't of Interior*, 538 U.S. 803, 807-08 (2003)) (internal quotation marks omitted). Ripeness contains "both a constitutional and prudential component." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993).

"The constitutional component of the ripeness inquiry is often treated under the rubric of standing and, in many cases, ripeness coincides squarely with standing's injury in fact prong." *Thomas*, 220 F.3d at 1138. A challenge to agency action is ripe when the government issues a final decision that inflicts concrete, particularized, and actual or imminent injury. *C.f. Herrington v. Cnty. of Sonoma*, 857 F.2d 567, 569 (9th Cir. 1988) (explaining a challenge to land use regulations is ripe when "a final decision by the government . . . inflicts a concrete harm upon the plaintiff

landowner"); *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (ruling ripeness requires plaintiff to show concrete, particularized, and actual or imminent injury).

Because the NPRM's proposed regulations are not yet final, they do not yet inflict any actual or imminent injury. The IRS may modify the proposed regulations substantially based on public comments, may withdraw them entirely, or may finalize them in a form that does not apply to Plaintiffs' transactions. These contingencies render any current injury speculative. For these same reasons, Plaintiffs' challenge to the Reporting Regulations are also unripe, as their application to Plaintiffs depends on the MIS transaction being designated a listed transaction. If the regulations proposed by the NPRM never become final, the Reporting Regulations will not apply to Plaintiffs, and they would not suffer any injury that would give them standing to challenge these regulations.

Prudential ripeness has a "twofold aspect, requiring us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967), *abrogated on other grounds by statute*, Pub. L. 94–574, 90 Stat. 2721, *as recognized in Califano v. Sanders*, 430 U.S. 99 (1977). An administrative action is fit for judicial review when an agency's decision is at an "administrative resting place." *Cottonwood Envtl. Law Ctr. v. United States Forest Serv.*, 789 F.3d 1075, 1084 (9th Cir. 2015). As the NPRM's proposed regulations have not undergone each step of the rulemaking process, they have not yet reached an "administrative resting place." *Ass'n of Am. Med. Colls. v. United States*, 217 F.3d 770, 780 (9th Cir. 2000) (providing that action is at administrative resting place where it "is a definitive statement of an agency's position" and "requires immediate compliance"). Further, the hardship to Plaintiffs is minimal because the proposed regulations

impose no current legal obligations. Any business disruption or reputational effects flow from market responses to proposed regulations, not from any legal compulsion.

Because no legal consequences presently attach to the regulations proposed in the NPRM, it is premature for the Court to consider Plaintiffs' claims. Plaintiffs may renew their challenge if and when Treasury and the IRS's rulemaking "generates concrete, legal ramifications" for Plaintiffs. *Action on Smoking & Health v. Dep't of Lab.*, 28 F.3d 162, 165 (D.C. Cir. 1994). At this point, however, the Court lacks jurisdiction over Plaintiffs' Complaint, and it must be dismissed.

## IV.     ORDER

IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss (Dkt. 17) is **GRANTED**. All claims in the Complaint are dismissed without prejudice for lack of subject matter jurisdiction under Rule 12(b)(1). The Clerk of Court is directed to close this case.

2. Plaintiffs' Motion that the Court Take Judicial Notice (Dkt. 21) is **GRANTED**.

DATED: September 29, 2025

Amanda K. Brailsford
U.S. District Court Judge